United States District Court
Southern District of Texas

**ENTERED**

March 06, 2017

David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **MARTIN VILLAFRANCA, JR.,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. B-16-77** |
| | § | |
| **REX TILLERSON, ET AL.,** | § | |
| **Defendants** | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On April 25, 2016, Plaintiff Martin Villafranca Jr. ("Villafranca") filed a complaint against Defendants Petra Horne, in her official capacity as Port Director of the Brownsville Port of Entry; John F. Kerry[1], in his official capacity as Secretary of State; and the United States of America (collectively "Defendants").[2] Dkt. No. 1.

In that complaint, Villafranca alleged that his U.S. passport renewal application was arbitrarily and capriciously denied.  Id.  According to Villafranca, this denial prevented him from lawfully re-entering the United States. Id.  Villafranca's complaint sought a writ of habeas corpus, as well as relief under the Administrative Procedures Act ("APA"). Id.  That complaint was later amended to reflect new events in the case, but the substantive claims remained the same. Dkt. No. 14.

On June 28, 2016, Defendants filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6), asserting that the Court lacked jurisdiction to consider Villafranca's claims. Dkt. No. 9.  Villafranca filed a response and Defendants filed a reply. Dkt. Nos. 17, 20.

---

[1] Rex Tillerson has been previously substituted as the proper defendant, pursuant to FED. R. CIV. P. 25(d). Dkt. No. 36.

[2] The Court notes that any claims against Horne and Tillerson in their official capacities constitute a suit against the agencies that they lead. Culbertson v. Lykos, 790 F.3d 608, 623 (5th Cir. 2015).

1

After reviewing the record and the relevant case law, the Court recommends that the motion to dismiss be granted.  Villafranca has failed to follow the procedures established by law for those in his position, which precludes jurisdiction in this Court to consider his claims.

**I. Background**

**A. Factual Background**

According to the complaint, Villafranca was born in September 1982 in Cameron County, Texas, which would make him a natural-born American citizen. Dkt. No. 14, p. 3. "His birth was assisted by the midwife, Maria de Jesus M. Sandoval." Id.  Within three days of his birth, there was an American birth certificate registered in his name. Dkt. No. 3, p. 4.

On November 19, 1982, a Mexican birth certificate was issued for Villafranca, which also indicated that he had been born in Cameron County, Texas. Dkt. No. 3, p. 15.

In October 2005, Villafranca received a United States passport. Dkt. No. 3, p. 20. That passport expired on October 26, 2015. Id.

On October 23, 2015, Villafranca went to the U.S. Consulate's office in Monterrey, Mexico, and applied to have his passport renewed. Dkt. No. 3, p. 22.

On October 30, 2015, a Consular employee – who identified herself as Claudia Hernandez – called Villafranca to verify the information on his application and to ask for an emailed copy of his Mexican birth certificate. Dkt. No. 14, p. 4.  Villafranca immediately emailed a copy of the birth certificate to Hernandez. Id.

On November 23, 2015, Villafranca called the American Citizen Services office to ask about the status of his application. Dkt. No. 14, p. 4.  Hernandez, the Consular employee, informed Villafranca that his parents needed to attend an interview at the U.S. Consulate in Monterrey in order to complete his application. Id.  Villafranca informed her that his parents were in the process of receiving legal resident status and could not leave the U.S. until that process was complete. Id, p. 5.  Villafranca asked if his parents could be interviewed by telephone or at a location in the United States; Hernandez told him that she would ask her supervisors. Id, pp. 4-5.

On November 24, 2015, Hernandez informed Villafranca that his parents must complete the in-person interview in Monterrey and that his request for a telephone interview or personal interview in the U.S. was denied.

On December 7, 2015, Villafranca received an unsigned email from the Consulate's office, informing him that his parents were required to attend the interview and that if no communication was made within 90 days, his application would be denied. Dkt. No. 14, p. 5.

On February 1, 2016, Villafranca – through counsel – sent a letter to the consulate, outlining why his parents could not travel to Mexico for the interview. Dkt. No. 14, p. 5. Again, Villafranca reiterated his offer for his parents to do a telephonic interview or an in-person interview within the United States. Id.

On July 6, 2016, Villafranca received a letter – that was dated February 1, 2016 – from the Consulate denying his passport renewal. Dkt. No. 14-1, p. 3.

**B. Procedural Background**

On April 25, 2016, Villafranca filed a complaint against the Defendants. Dkt. No. 1. In his complaint, Villafranca seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, and a declaratory judgment that he is a U.S. citizen, pursuant to 8 U.S.C. § 1503. Id. He also asserts that jurisdiction exists in this Court, pursuant to the APA. Id.

On June 28, 2016, Defendants timely filed a motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(1) and (b)(6). Dkt. No. 9. In that motion, Defendants asserted that Villafranca is not in custody for habeas purposes and that he failed to exhaust his remedies prior to filing the habeas petition. Defendants also asserted that Villafranca cannot receive relief under 8 U.S.C. § 1503(a), because he is not physically present in the United States, but must seek relief under § 1503(b)-(c). Id. According to Defendants, section 1503(b) permits Villafranca to seek a "certificate of identity" from the State Department that would allow him to physically enter the United States to seek admission. Lastly, Defendants argue that the APA does not grant an independent basis for jurisdiction in this case. Id.

3

On July 18, 2016, Villafranca timely filed an amended petition against the Defendants. Dkt. No. 14.  Villafranca raised no new claims, but included the information regarding the letter officially notifying him of the denial of his passport renewal application. Id.

On July 23, 2016, Villafranca timely filed his response brief. Dkt. No. 17.  Villafranca argued that he is in custody for habeas purposes because he is a U.S. citizen who is unable to return to this country. Id.  He also asserted that jurisdiction exists under the APA because 8 U.S.C. § 1503(b)&(c) do not provide an adequate remedy at law. Id.  According to Villafranca, he is permitted to pursue an APA claim under Rusk v. Cort, 369 U.S. 367 (1962). Id.

On August 3, 2016, Defendants timely filed a reply brief. Dkt. No. 20.  In that reply, Defendants reiterated that Villafranca is not in custody because he is not "subject to significant restraints on his liberty [that are] not shared by the public generally." Id., p. 3. Defendants also assert that jurisdiction does not exist under the APA. Id.

On September 7, 2016, Villafranca filed a motion for leave to file an affidavit. Dkt. No. 23.  In that affidavit, Villafranca's attorney asserts that Villafranca called the U.S. consulate in Monterrey, Mexico, and was informed that they do not issue certificates of identity there. Dkt. No. 23-1.  However, on August 30, 2016, the consulate sent Villafranca's counsel a form FS-0343 – for Villafranca to complete – by which to apply for a certificate of identity. Id.

On October 6, 2016, Defendants filed a response to Villafranca's motion for leave to file the affidavit. Dkt. No. 27.  In that response, Defendants admitted that the Government's "position regarding certificates of identity has necessarily changed." Id., p. 5.  Prior to 2015, the Government "typically conceded jurisdiction under 8 U.S.C. 1503(a) for plaintiffs [who were] not within the United States." Id. (internal quotations omitted).  Since, 2015, contrary to its prior position, the Government has not conceded jurisdiction, instead positing that the

statutory language does not support jurisdiction. Id.[3]

The reply also stated that the State Department estimates that a certificate of identity – for purposes of 8 U.S.C. § 1503(b) – has not been issued since 1987. Id, p. 11.  The Defendants state that despite this fact, Villafranca "can apply for and possibly receive" such a certificate. Id, p. 10.

On October 28, 2016, Villafranca filed a reply brief. Dkt. No. 33.  Villafranca argues "that there is no policy or procedure in place, nor are there any criteria or standards that must, much less would, be applied in adjudicating applications" for certificates of identity. Id, p. 7.

On January 26, 2017, the Court set the matter for an evidentiary hearing on the issue of "what statutes or federal regulations require Villafranca's parents travel outside of the United States for their interview and what procedures are available to review that requirement in any particular case." Dkt. No. 34.

On February 24, 2017, the Defendants filed a motion seeking to have the evidentiary hearing cancelled. Dkt. No. 37.  In support of the motion, the Defendants filed exhibits showing that both of Villafranca's parents had been granted advance parole to travel into Mexico and return to the United States. Dkt. No. 37-2.  Villafranca's father could freely travel to and from Mexico from September 30, 2015, until September 30, 2016. Id. Villafranca's mother could do likewise from December 8, 2015, until December 8, 2016. Dkt. No. 37-3.  The Government argued that at the time that the interviews were requested, there was no legal impediment to the parents traveling to – and returning from – Mexico. The Government did concede, however, that, after departing the United States, Villafranca's parents were not "guarantee[d]" to be able to return to the United States. Dkt. No. 37, p. 5, n 5.

On March 6, 2017, Villafranca filed a response. Dkt. No. 42. Villafranca echoed the

---

[3] The Court notes that "equitable estoppel is rarely valid against the government." Linkous v. U.S., 142 F.3d 271, 277 (5th Cir. 1998).

fact that "despite the fact that Mr. Villafranca's parents did have advance parole at the time the consulate requested they come for an interview, this did not guarantee they would be allowed to reenter the United States after the interview." Id., p. 5 (citing 8 C.F.R. § 212.5(e)(2)(i). Villafranca noted that his passport has not been renewed and that the State Department has "unilaterally revoked" his sister's passport based upon the existence of Mexican birth certificates.[4] Id, p. 3.  In light of the Government's authority to unilaterally revoke the advanced parole, and the ongoing disputes as to where the Villafranca children were born, Villafranca asserts that "no ethical and responsible immigration attorney" would have advised the parents to leave the U.S. for an interview in Mexico. Id, p. 5.[5]

On March 6, 2017, based upon clarification of the legal and practical limitations of departing with advance parole, the Court cancelled the evidentiary hearing. Dkt. No. 45.

## II. Applicable Law

### A. Jurisdiction

The threshold question, before considering the substance of any claim, is whether the court possesses jurisdiction over the claim.  This is the case, because federal courts are courts of limited jurisdiction, whose authority exists only within the boundaries established by Congress and the United States Constitution. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583-84 (1999).  The plaintiff bears the burden of proving jurisdiction. Choice Inc. of Tex. v. Greenstein, 691 F.3d 710, 714 (5th Cir. 2012)

---

[4] See Denisse Villafranca v. Kerry, Civil Case No. 16-155, (S.D. Tex.), Dkt. No. 28.

[5] One must question the value of advanced parole status, if the Government can revoke that status at any time and the status does not generally guarantee re-admission into the United States after departure.  Furthermore, the Court sympathizes with the impossible situation in which Villafranca's parents found themselves.  If they refused to travel to Mexico for the interview at the consulate, Villafranca's passport application would be denied and he would be unable to legally re-enter this country.  If they traveled to the consulate for the interview, they had no guarantee that they would be permitted to re-enter the United States. Thus, the parents were placed in the position of choosing to prosecute their petition for citizenship or that of their child.  Recognition of this seemingly impossible position – no matter how regrettable – does not create subject matter jurisdiction allowing this Court to review Villafranca's claim to citizenship.

A motion filed under "Rule 12(b)(1) of the FEDERAL RULES OF CIVIL PROCEDURE allows a party to challenge the subject matter jurisdiction of the district court to hear a case." Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001). A court may properly dismiss a claim for lack of jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Mississippi, Inc. V. City of Madison, Miss., 143 F.3d 1006, at 1010 (5th Cir. 1998).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." Ramming, 281 F.3d at 161. The Court may look to the following to find a lack of jurisdiction: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id. (citing Barrera-Montenegro v. U.S., 74 F.3d 657, 659 (5th Cir. 1996)).[6]

## B. Habeas Corpus

In order for a court to have habeas jurisdiction under 28 U.S.C. § 2241, the petitioner must be "in custody" when he or she files the petition. Zolicoffer v. U.S. Dep't of Justice, 315 F.3d 538, 540 (5th Cir. 2003). Physical detention is not required to meet this requirement. Rosales v. Bureau of Immigration & Customs Enf't, 426 F.3d 733, 735 (5th Cir. 2005). "History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." Jones v. Cunningham, 371 U.S. 236, 240 (1963) (emphasis added).

A habeas petitioner is required to exhaust all available administrative remedies prior to filing a habeas petition. Smith v. Thompson, 937 F.2d 217, 219 (5th Cir. 1991) (citing

---

[6] The Court notes that because it concludes that jurisdiction does not exist in this case, it is unnecessary for it to resolve whether Villafranca states a claim upon which relief can be granted. McCasland v. City of Castroville, 478 F. App'x 860, 860 (5th Cir. 2012).

<u>Hessbrook v. Lennon</u>, 777 F.2d 999, 1003 (5th Cir. 1985)).   "The exhaustion of administrative remedies doctrine requires not [only that] administrative remedies selected by the complainant be first exhausted, but instead that all those prescribed administrative remedies which might provide appropriate relief be pursued prior to seeking relief in the federal courts." <u>Hessbrook</u>, 777 F.2d at 1003.   Thus, it is the possibility of relief – not the likelihood of  success or how long the prescribed remedy make take – that dictates which remedies must be pursued to satisfy the requirement for exhaustion.

**C. Administrative Procedures Act**

The Administrative Procedures Act provides for judicial review of agency actions. 5 U.S.C. § 706(1).  As relevant here, the Court only has jurisdiction to review agency actions that constitute "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.  If there is "a statutory and regulatory scheme that specifically provides for judicial review," the APA does not apply.  <u>Dresser v. Meba Med. & Benefits Plan</u>, 628 F.3d 705, 711 (5th Cir. 2010).

In order for an agency action to be considered final, it must (1) mark the "consummation" of the agency's decision making process and (2) it must be a decision by which "rights or obligations have been determined," or from which "legal consequences will flow." <u>Bennett v. Spear</u>, 520 U.S. 154, 178 (1997).

**D. Citizenship Determinations**

If a United States citizen or national is denied a "a right or privilege as a national of the United States," there is a statutory vehicle for a declaratory judgment that the person is a citizen. 8 U.S.C. § 1503.

If the plaintiff is "within the United States," he may file a complaint, <u>i.e.</u> a law suit, in a Federal District Court against the head of the department or agency seeking a declaratory judgment that the petitioner is a United States citizen. 8 U.S.C. § 1503(a).

On the other hand, if the plaintiff is "not within the United States," he must follow the procedures found in §§ 1503(b) & (c).  Pursuant to § 1503(b), the petitioner must "make

application to a diplomatic or consular officer of the United States in the foreign country in which he is residing for a certificate of identity for the purpose of traveling to a port of entry in the United States and applying for admission." 8 U.S.C. § 1503(b).  A certificate of identity is given if there is a substantial basis to conclude that the person may be a U.S. citizen. Id.  The consular or diplomatic officer's denial of the issuance of a certificate of identity can be appealed only to the Secretary of State. Id.[7]

After making the application, if a certificate of identity is issued, then the petitioner "may apply for admission to the United States at any port of entry" and would be subject to the immigration proceedings that apply to "aliens seeking admission to the United States." 8 U.S.C. § 1503(c).  If, at the conclusion of immigration proceedings, the Attorney General determines that the petitioner is not entitled to admission, it is then that judicial review is available in the form of habeas corpus. Id.

Thus, section 1503 creates a binary process.  If the individual is located "within the United States," then he utilizes the procedure found at § 1503(a).  If the individual is "not within the United States," then he is required to utilize the procedures found at §§ 1503(b) & 1503(c).

### III. Analysis

The Fifth Circuit has observed that "the immigration law of the United States is inexcusably complicated and in need of immediate revision." Villa v. Holder, 464 Fed. App'x. 270, 272 (5th Cir. 2012).  This case seems to be one more example of the accuracy of that appraisal.

Furthermore, the Court is at a loss to understand how – based upon what appears to be the same information – Villafranca's citizenship would have come into question in 2015, after it was previously determined in 2005.  Indeed, the birth certificates in this case all indicate birth in the United States; no evidence has been introduced that indicates Villafranca

---

[7] As discussed later, if the Secretary of State denies the issuance of a certificate of identity, a petitioner would have a valid APA claim. See Infra. section III (B).

is not a United States citizen.  Despite these overarching questions, this is a court of limited jurisdiction; "[t]he law is a limited tool, and it cannot right every wrong." <u>Lutkewitte v. Gonzales</u>, 436 F.3d 248, 270 (D.C. Cir. 2006)

This case is not about the substantive question of whether Villafranca is an American citizen, but rather is about the procedural question of what steps Villafranca must follow in order to adjudicate his citizenship claim.  Until he follows the prescribed procedures, there is no jurisdiction in this Court to decide his claim.

As to Villafranca's <u>habeas</u> claim, the Court must first determine whether Villafranca is "in custody" for <u>habeas</u> purposes and, then, whether he has exhausted all of his remedies prior to filing a <u>habeas</u> petition.  As to the APA claim, the Court must resolve whether such a vehicle is available to correct Villafranca's claimed denial.  Lastly, the Court must sort out whether Villafranca can seek a declaration of citizenship under 8 U.S.C. § 1503(a).  Each question is addressed in turn.

### A. <u>Habeas</u> <u>Corpus</u>

Villafranca has asserted that he has a valid <u>habeas</u> <u>corpus</u> claim.  However, he has failed to meet two prerequisites: (1) being in custody; and (2) exhausting his administrative remedies.

### 1. In Custody

Villafranca asserts that he satisfies the "in custody" requirement for <u>habeas</u> relief because he is a United States citizen, who is not permitted to enter this country and not permitted to travel internationally.  Despite his claim, any limitations on his actions do not amount to "in custody" for <u>habeas</u> purposes.

As discussed earlier, "in custody" does not require physical custody – such as imprisonment – but it must involve "restraints not shared by the public generally." <u>Jones v. Cunningham</u>, 371 U.S. at 240.  For example, persons on parole or probation are "in custody," because their freedom is curtailed in ways not shared by the general public. <u>Jones v. Cunningham</u>, 371 U.S. at 240.  The same holds true for individuals on supervised release.

U.S. v. Brown, 117 F.3d 471, 475 (11th Cir. 1997).  Indeed, even a person who was ordered by a court to attend alcohol rehabilitation classes was found to be "in custody." Dow v. Circuit Court of the First Circuit, 995 F.2d 922, 923 (9th Cir. 1993).

The deportation of a non-citizen does not place that person "in custody," even though they are unable to lawfully re-enter the United States. Miranda v. Reno, 238 F.3d 1156, 1159 (9th Cir. 2001); Chavez-Coronado v. Cockrell, 2003 WL 21505417, at *4 (N.D. Tex. Apr. 4, 2003).  A parent whose parental rights have been terminated is also not in custody. Salinas v. Texas Dep't of Family & Protective Servs., 2012 WL 13685, at *1 (W.D. Tex. Jan. 4, 2012).  Thus, the custody requirement requires that the person's movements and freedom be significantly curtailed.

Villafranca, however, is not being subjected to restraints that are not shared by all U.S. citizens.  It is illegal for a United States citizen "to depart from or enter, or attempt to depart from or enter, the United States unless he bears a valid United States passport." 8 U.S.C. § 1185(b).  All U.S. citizens are required to prove their citizenship prior to receiving a passport. 22 U.S.C. §§ 212, 213.

Every United States citizen who does not possess a valid passport – a group which constitutes a majority of Americans[8] – are similarly unable to travel internationally or to legally re-enter the United States after traveling.  It cannot fairly be said that these millions of people are in custody for habeas purposes. See Villarreal, 2016 WL 4094708, *4 (stating that a U.S. citizen who is physically in Mexico, but lacks a valid U.S. passport, is not in custody for habeas purposes).

Similarly, Villafranca is not in custody for habeas purposes.  Because custody is a condition precedent to habeas jurisdiction, this claim should be dismissed without prejudice

---

[8] In fiscal year 2015, the State Department reported that there were just over 125 million valid U.S. passports in circulation. Passport Statistics, U.S. Department of State (https://travel.state.gov/content/passports/en/passports/statistics.html).  For the sake of comparison, the U.S. population is estimated to be around 321 million people as of July 1, 2015. The United States, CIA World Fact Book (https://www.cia.gov/library/publications/the-world-factbook/geos/us.html).

for lack of jurisdiction.

### 2. Exhaustion of Remedies

Even if the Court considered Villafranca to be in custody for <u>habeas</u> purposes, he has not exhausted his administrative remedies, which produces the same result – that his case should be dismissed for lack of jurisdiction.

As previously noted, Villafranca must exhaust all administrative remedies which could potentially provide him relief; not just the ones he believes are convenient or advantageous. <u>Hessbrook</u>, 777 F.2d at 1003.  The relevant statute in this case – 8 U.S.C. § 1503(c) – provides a method by which <u>habeas</u> claims can be adjudicated in federal court.  If a person, who is outside of the United States, receives a certificate of identity from the State Department, they may apply for admission into the United States at a port of entry. 8 U.S.C. § 1503(c).  This application for admission would require the petitioner to utilize the immigration court system. <u>Id</u>.  If the Attorney General ultimately denies the petitioner admission to the United States, then the petitioner may file a <u>habeas</u> <u>corpus</u> petition.[9]

There is no dispute that the State Department rarely issues certificates of identity; there is only one known instance of one being issued since 1987. Dkt. No. 27-1.  Indeed, the affidavit provided by Villafranca's counsel indicates that the consular staff in Monterrey were initially unfamiliar with these certificates. Dkt. No. 23-1.  From these facts, Villafranca argues that he cannot be forced to exhaust this potential remedy because it is illusory – that there are no criteria or standards for adjudicating his application. Dkt. No. 33.  This argument puts the cart ahead of the horse

If Villafranca's application for a certificate of identity is denied by the consular

_____

[9] As previously noted, if the issuance of a certificate of identity is denied by the State Department, the statute does not explicitly grant a right of judicial review of the denial. 8 U.S.C. § 1503(b).  As discussed in the next section, under § 1503(b) a petitioner located outside of the United States may have a valid APA claim if there has been a denial of a certificate of citizenship by the final authority within the State Department.  Thus, there are different requirements for the exhaustion of administrative remedies, different agencies involved, and different predicates for federal court jurisdiction established by §§ 1503(a) and 1503(b)-(c).

officials, he can appeal to the Secretary of State. 8 U.S.C. § 1503(b).  If the Secretary of State denies that appeal, it would almost certainly constitute final agency action, which could be reviewed in federal court under the APA – as discussed further in the following section of this report and recommendation.  If the State Department denies the appeal in an arbitrary and capricious manner – by not applying proper criteria when adjudicating the application – then a federal court could remand the application to the agency, to be reviewed in conformance with proper criteria. 5 U.S.C. § 706.

In essence, Villafranca is asking the Court to bypass all of these steps and to preemptively declare that the agency is unable to properly adjudicate his potential application.  The Court is not clairvoyant.  See U.S. v. Escalante-Reyes, 689 F.3d 415, 421 (5th Cir. 2012) ("we expect district judges to be knowledgeable, not clairvoyant.") (quoting U.S. v. Turman, 122 F.3d 1167, 1170 (9th Cir.1997)).  Moreover, Villafranca is asking the Court to issue an advisory opinion that the State Department's procedures are inadequate, before Villafranca actually utilizes those procedures.  Such a decision would amount to an advisory opinion, which the Court lacks the authority to issue. Amar v. Whitley, 100 F.3d 22, 23 (5th Cir. 1996) ("this Court lacks the jurisdiction and the judicial resources to issue an advisory opinion.").  The Court will not presume that the State Department is incapable of adjudicating Villafranca's possible application for a certificate identity, especially when there is no evidence that Villafranca has even filed such an application.

The Court understands that this route has the potential to be circuitous, expensive, and time-consuming.  It is, however, the route that Congress has established for people who are not physically present in the United States to utilize before receiving judicial review of their claims to citizenship.  Most importantly, for present purposes, this route might provide Villafranca with the relief that he seeks: a finding that he is a United States citizen.  His failure to utilize this route means that he has not exhausted his administrative remedies. Hessbrook, 777 F.2d at 1003.

Accordingly, this claim should be dismissed without prejudice for lack of jurisdiction.

### B. APA Claim

#### 1. No final agency action

Villafranca asserts that the APA also grants this Court jurisdiction to consider his claim.  This argument is not presently supported by the law.

As previously noted, jurisdiction does not exist under the APA unless the petitioner is challenging a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.  If there is "a statutory and regulatory scheme that specifically provides for judicial review," then the APA is inapplicable. Dresser, 628 F.3d at 711.  In this case, there is such a statutory scheme.

If Villafranca receives a certificate of identity – from a consular or other diplomatic office outside of the United States – he can present himself at a port of entry and seek admission to the United States.  8 U.S.C. § 1503(c).  If he is denied admission, then his claims can be judicially reviewed in a habeas proceeding. Id.  Thus, there is a specific statutory scheme that provides judicial review, making the APA inapplicable in this case. Dresser, 628 F.3d at 71; see also Villarreal, 2016 WL 4094708, *6 (stating that an APA claim was foreclosed when relief is available under § 1503).

Furthermore, the denial of the passport application does not constitute final agency action.  If there are further administrative or statutory remedies available to the petitioner, then the agency action is not final for APA purposes. Qureshi v. Holder, 663 F.3d 778, 781 (5th Cir. 2011).  The denial of the passport application is just an intermediate step, in a lengthy regulatory, and statutory process, that culminates in the procedure outlined in 8 U.S.C. § 1503. See Am. Airlines, Inc. v. Herman, 176 F.3d 283, 288 (5th Cir. 1999) (noting that intermediate agency action is not a final agency action if there other procedural remedies available).

The Court notes that if Villafranca were to apply for a certificate of identity; have his application denied; appeal to the Secretary of State and have the Secretary of State affirm that denial; then he may have a claim under the APA.  At that point, the Secretary of State's

decision would constitute final agency action – because it would be the consummation of the State Department's decision-making process – and the decision would determine Villafranca's legal right to a passport. <u>Bennett</u>, 520 U.S. at 178.  Furthermore, the statute does not explicitly provide – or prohibit – judicial review, so Villafranca would have no other adequate remedy in court. 5 U.S.C. § 704.  Under those specific circumstances, Villafranca would have a valid APA claim; but those are not the circumstances currently presented in this case.

### 2. <u>Rusk</u> does not dictate a different result

Villafranca cites <u>Rusk v. Cort</u>, 369 U.S. 367 (1962) for the proposition that he may pursue remedies under either 8 U.S.C. § 1503 or the APA.  In <u>Rusk</u>, the Supreme Court opined that the APA provided an independent basis for jurisdiction to consider the plaintiff's citizenship claim. <u>Rusk</u>, 369 U.S. at 372.

What Villafranca fails to take into account is that the Supreme Court later expressly reversed its holding that the APA provided an independent basis for jurisdiction. <u>Califano v. Sanders</u>, 430 U.S. 99, 105 (1977).  The Supreme Court specifically cited <u>Rusk</u> as one of the cases that was abrogated by its ruling in <u>Califano</u>.

> Three decisions of this Court arguably have assumed, with little discussion, that the APA is an independent grant of subject-matter jurisdiction. <u>See Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971); <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); <u>Rusk v. Cort</u>, 369 U.S. 367, 372, 82 S.Ct. 787, 790, 7 L.Ed.2d 809 (1962). However, an Act of Congress enacted since our grant of <u>certiorari</u> in this case now persuades us that the better view is that the APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions.

<u>Califano</u>, 430 U.S. at 105.  Thus, Villafranca's argument is contrary to the law as it currently stands.

Accordingly, the Court lacks jurisdiction to consider Villafranca's APA claim and it should be dismissed without prejudice for lack of jurisdiction.

### C. Declaration of Citizenship

Villafranca seeks a judicial declaration, pursuant to 8 U.S.C. § 1503(a), that he is a United States citizen.  This statutory vehicle is unavailable to him under the facts of this case.

As previously mentioned, § 1503 creates a binary procedure, depending upon the petitioner's location.  If the petitioner is within the United States, he can sue in federal court for a declaration of citizenship under § 1503(a); if the petitioner is not within the United States, he must apply for a certificate of identity and follow the procedures set out in §§ 1503(b) & (c).

It is clear from the plain text of the statute that if a person who is "within the United States" is denied a passport, then he or she may sue the Government for a judicial declaration of their citizenship. 8 U.S.C. § 1503(a).  The key question to be resolved is whether Villafranca must be legally and physically present in the United States in order to pursue this remedy.

As an initial matter, the Court notes that it is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (internal quotations omitted).  The Court must read this statute accordingly.

If persons who are not physically and legally present in the United States are permitted to pursue their claims under § 1503(a), then the word "not" in § 1503(b) is superfluous.  Similarly, if anyone who is claiming to be a citizen – no matter where they are currently living – can simply sue the Government under § 1503(a), then the phrase "not within the United States" in § 1503(b) is of no effect.   The only logical way to read this statute and to give effect to all of its words is to conclude that Congress intended two different procedures; one that applies to individuals physically present in the United States and a different procedure for those individuals who are not physically present in the United States.  There seems to be nothing novel in such an approach.

16

This conclusion is consistent with the decisions of several federal courts, who have concluded that § 1503(a) only applies to those individuals who are physically present in the United States. Okere v. United States of Am. Am. Citizens Servs., No. 14 C 4851, 2015 WL 3504536, at *3 (N.D. Ill. June 2, 2015); Bensky v. Powell, 391 F.3d 894, 896 (7th Cir. 2004) (section 1503(a) "is inapplicable to someone who is not in the United States when he sues"); Said v. Eddy, 87 F. Supp. 2d 937, 940 (D. Alaska 2000).

Villafranca claims that, because he was standing on the Gateway International Bridge when the suit was filed, he was physically present within the United States. Dkt. No. 1, p. 2. Even if the Court assumes that briefly standing on the American side of an international bridge meets the requirement to be "within" the United States[10], it still does not fully satisfy the statute, nor does it change the outcome in this case. To satisfy the statutory requirements, Villafranca must not only be merely present in the United States, he must also "reside" or "claim a residence" within the Southern District of Texas. § 1503(a).

The term "residence" has a very specific meaning in the Immigration and Nationality Act. "The term 'residence' means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33) (emphasis added). Thus, it does not matter where Villafranca plans to reside in the future, but is solely focused on where he actually dwells. Thus, it is an objective test based upon where Villafranca actually lives his life, rather than based on his subjective intent. de Rodriguez v. Holder, 724 F.3d 1147, 1151 (9th Cir. 2013); Ortiz-Arriaga v. Castro, Civil No. 1:12-26, Dkt. No. 69 (S.D. Tex. 2013).

By his own admission, Villafranca "works in Monterrey and currently resides there" and he "intends to return" to Brownsville at some unspecified time. Dkt. No. 17, pp. 17-18. There has been no evidence pled that Brownsville represents a "principal actual dwelling

---

[10] See Rosasco v. Brownell, 163 F. Supp. 45, 47 (E.D.N.Y. 1958) (holding that mere temporary physical presence in the United States does not satisfy § 1503(a)); Villafranca v. Kerry, Civil No. 1:16-155 (S.D. Tex. 2017), Dkt. No. 28 (holding that merely standing at a port of entry does not qualify as being "within the United States" for purposes of § 1503(a)).

place" for Villafranca.  While § 1503(a) uses the phrase "claim a residence," the Court cannot consider Villafranca's intent to reside in Brownsville in the future. § 1101(a)(33).  The Court can only view the objective evidence of how Villafranca lives his day-to-day life.

Furthermore, "the statute does not treat every dwelling in which an alien stays as a new residence; the text instructs courts to take a wider view, deeming the 'principal, actual dwelling place' and 'the place of general abode' to be the residence." de Rodriguez, 724 F.3d at 1151.  While it may be theoretically possible for a person to have two residences where they regularly dwell, there is no objective evidence in the record that Villafranca has any current residence in Brownsville.  Thus, Villafranca does not have – nor does he claim – a current residence in the United States; for which reason, he cannot avail himself of § 1503(a).

Villafranca cites to Rusk for the proposition that "a person outside the United States who has been denied a right of citizenship is not confined to the procedures prescribed by" § 1503(b)-(c). Dkt. No. 17, p. 19.  A close reading of Rusk does not support Villafranca's assertion of authority.

The petitioner in Rusk was a doctor named Joseph Cort, who fled the United States to avoid being drafted. Rusk, 369 U.S. at 369.  The State Department revoked Cort's citizenship under a law that stripped citizenship from those who evaded the draft. Id.

Cort, who was living in Czechoslovakia at the time, sued the Secretary of State in federal court seeking a declaration that he retained his citizenship. Id.  The Supreme Court specifically identified: "the question posed is whether the procedures specified in § 360(b) and (c)[11] provide the only method of reviewing the Secretary of State's determination that Cort has forfeited his citizenship." Rusk, 369 U.S. at 375 (footnote added).  The Supreme Court held that the APA provided an independent jurisdictional basis to review the Secretary of State's determination. Rusk, 369 U.S. at 379-380.  That specific holding regarding the APA, as discussed earlier, was later expressly abrogated by the Supreme Court in Califano.

---

[11] The references to § 360 are references to section 360 of the Immigration and Nationality Act; that section was codified at 8 U.S.C. § 1503.

430 U.S. at 105.

The Seventh Circuit has observed that <u>Rusk</u> did not hold that § 1503(a) was available to persons outside of the United States. <u>Bensky</u>, 391 F.3d at 896.  Indeed, there is little basis for concluding that <u>Rusk</u> currently permits a petitioner, who is outside of the United States, to pursue a claim under § 1503(a).

This conclusion is undisturbed by the Fifth Circuit's decision in <u>Parham v. Clinton</u>, 374 Fed. App'x. 503 (5th Cir. 2010) (unpubl.).  In that  unpublished case, the Fifth Circuit addressed the applicability of <u>Rusk</u> in a footnote.  The plaintiffs in <u>Parham</u> – who claimed to be children of American Servicemen – were in the Philippines when they filed their complaint.  At the time they filed suit, they had yet to receive a final agency decision on their citizenship petitions. <u>Parham</u>, 374 F. App'x at 505 n. 2.

At the outset, the Fifth Circuit noted that the "plain language" of § 1503(a) limited its application to those who were within the U.S. <u>Parham</u>, 374 F. App'x at 505 n. 2.  The Court also noted  that <u>Rusk</u> and <u>Kahane</u> may permit those outside of the United States to utilize the procedures set forth in § 1503(a). <u>Id.</u>  The Court then considered whether the plaintiffs should be required to proceed under § 1503(a) or § 1503(b), but decided "we need not decide which of these two provisions is appropriate." <u>Id</u>.

The Fifth Circuit arrived at its conclusion because – whether the plaintiffs were permitted to proceed under § 1503(a) or § 1503(b) –  there was no final agency action, so judicial review was "currently inappropriate." <u>Id</u>.  Thus, the Fifth Circuit did not decide the availability of § 1503(a) for persons who are not within the United States.  Indeed, given the posture of case, that issue was not ripe for decision.

As previously noted, unpublished opinions from the Fifth Circuit are not definitive resolution of contested issues, but may be persuasive. <u>Ballard v. Burton</u>, 444 F.3d 391, 401 n. 7 (5th Cir. 2006).  Moreover, given the absence of specific direction and the express failure to decide the applicability of § 1503(a) to individuals located outside of the United States, the weight to be accorded to <u>Parham</u> in the current situation is limited.  In short, given

that the Fifth Circuit addressed the § 1503(a) issue in a single footnote; in an unpublished decision; and did not conclusively resolve the question, Parham provides little guidance in resolving the matter.  Accordingly, the Court believes that the plain language of the statute should control. See In re Universal Seismic Associates, Inc., 288 F.3d 205, 207 (5th Cir. 2002) ("as in any case of statutory interpretation, we look to the plain language of the statute, reading it as a whole and mindful of the linguistic choices made by Congress.").

This does not mean that Villafranca is left without a vehicle through which to pursue his citizenship claim.  He may still follow the procedures set forth in § 1503(b) and § 1503(c).  What he cannot do, given that he is not present in the United States, is pursue relief under § 1503(a).  Accordingly, this claim should be dismissed.

## IV. Recommendation

It is recommended that the motion to dismiss filed by Defendants Petra Horn, Rex Tillerson, and the United States of America be granted. Dkt. No. 9.  It is further recommended that the complaint filed by Martin Villafranca Jr. be dismissed without prejudice for lack of jurisdiction.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rolando Olvera, United States District Judge. 28 U.S.C. § 636(b)(1).  Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on

other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on March 6, 2017.

Ronald G. Morgan
United States Magistrate Judge