UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARTIN VILLAFRANCA, JR., <br> Plaintiff, | § <br> § <br> § | |
| v. | § | Civil Action No. 1:16-cv-00077 |
| REX TILLERSON et al., <br> Defendants. | § <br> § <br> § | |

## ORDER ADOPTING MAGISTRATE
## JUDGE'S REPORT AND RECOMMENDATION

This case arises from the United States Government's et al (hereafter "Defendants") denial of Martin Villafranca, Jr.'s (hereafter "Plaintiff") passport application and his subsequent inability to enter the United States. Plaintiff requests the Court grant him relief under: (1) habeas corpus, (2) 8 U.S.C. § 1503(a), and (3) the Administrative Procedure Act (hereafter "APA"). For the reasons stated below, the "Report and Recommendation of the Magistrate Judge" (hereafter "R&R") (Docket No. 46) is **ADOPTED**.

I. **FACTUAL BACKGROUND**[1]

Plaintiff claims he was born in Brownsville, Texas. At the time of the alleged birth, Plaintiff's parents lived in Matamoros, Mexico, and used their valid border crossing cards to enter the United States the day he was born.

Plaintiff has two birth certificates: one from Texas and one from Mexico. Of note, said birth certificates list the same birth date, September 21, 1982, and both certificates list the same birth location, Cameron County, Texas.[2] Likewise, Plaintiff's Baptismal Certificate confirms the same birth date and location.

On October 27, 2005, Plaintiff was issued a United States passport, valid for ten years. On October 26, 2015, Plaintiff presented himself at the United States Consulate in Monterrey, Mexico (hereafter "Consulate") to apply for a new passport. On October 30, 2015, Plaintiff received a telephonic communication from Claudia Hernandez (hereafter "Hernandez"), an

---

[1] The factual statements set forth herein were obtained from the following documents: Docket Nos. 3, 14, and 46.
[2] The Mexican Birth Certificate lists Plaintiff's name as "Martin Villafranca Fraga." The parties do not dispute that Plaintiff is the person listed in both certificates.

1

employee at the Consulate's American Citizen Services Unit (hereafter "ACS"); Hernandez requested Plaintiff to submit his Mexican Birth Certificate. Plaintiff complied with said request.

On November 23, 2015, Plaintiff called ACS to inquire on the status of his passport application. Plaintiff spoke with Hernandez, who informed Plaintiff that, in order to process his application, his parents needed to attend an interview at the Consulate. Plaintiff informed Hernandez that his parents could not leave the United States because they were in the process of adjusting their status to legal permanent residents. Plaintiff requested Hernandez to allow either a telephonic interview, or alternatively an in-person interview in the United States.

On December 7, 2015, Plaintiff received an email correspondence from ACS informing him that his parents needed to attend an in-person interview at the Consulate in Mexico, and if no communication was made within ninety days, Plaintiff's application would be denied. On February 1, 2016, Plaintiff's attorney sent ACS a correspondence, which informed ACS that Plaintiff's parents could not travel to Mexico, and offered to arrange an interview or a deposition in the United States. On July 6, 2016, Plaintiff's passport application was denied.

## II. **PROCEDURAL HISTORY**

On April 25, 2016, Plaintiff filed his "Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief" (Docket No. 1). On June 28, 2016, Defendants filed "Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) and 12 (b)(6)" (Docket No. 9). On July 18, 2016, Plaintiff filed his "Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief Amended Pursuant to F.R.C.P. Rule 15 (a)(1)(B)" (Docket No. 14). The Magistrate Judge did not issue and order granting said amendment. However, the Magistrate Judge relied and referenced the amended petition in the R&R. Thus, said amended petition was implicitly granted.

On July 23, 2016, Plaintiff filed "Petitioner's Opposition to Respondents' Motion to Dismiss Petitioner's Petition/Complaint Pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6)" (Docket No. 17). On August 3, 2016, Defendants filed "Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6)" (Docket No. 20). On August 16, 2016, Plaintiff filed "Petitioner's Reply to Defendants' Reply to Opposition to Respondents' Motion to Dismiss Petitioner's

Petition/Complaint Pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6)" (Docket No. 21). On the same day, the Magistrate Judge issued an "Order" (Docket No. 22), striking Plaintiff's reply.

On September 7, 2016, Plaintiff filed "Petitioner's Opposed Motion for Leave to File Supplemental Affidavit in Support of Petitioner's Brief in Response to Defendants' Motion to Dismiss" (Docket No 23). On September 8, 2016, the Magistrate Judge issued an "Order" (Docket No. 24), ordering Defendants to respond to Plaintiff's opposed motion for leave. On October 6, 2016, Defendants' filed "Defendants' Response to the Court's September 8, 2016 Order and to Plaintiff's Motion for Leave to File Supplemental Affidavit in Support of His Brief in Response to Defendants' Motion to Dismiss" (Docket No. 27). On October 28, 2016, Plaintiff filed "Plaintiff's Reply to Defendants' Response to the Court's Order of September 8, 2016 and to Plaintiff's Motion for Leave to File Supplement Affidavit" (Docket No. 33). On March 15, 2017, the Magistrate Judge issued an "Order" (Docket No. 47), granting Plaintiff's motion to supplement with said affidavit.

On March 6, 2017, the Magistrate Judge filed the "Report and Recommendation of the Magistrate Judge" (Docket No. 46). On March 27, 2017, Plaintiff filed "Petitioner's Objections to Report and Recommendation of the Magistrate Judge" (Docket No. 52).

## III. **DISCUSSION**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). A party may challenge a district court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The party asserting jurisdiction bears the burden to prove the district court has jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In ruling on a Rule 12(b)(1) motion, courts must "accept all factual allegations in the plaintiff's complaint as true." *Den Norske Stats Oljeselkap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).

### A. **The Court lacks jurisdiction to provide habeas relief**

The R&R recommended dismissal of Plaintiff's habeas corpus claim because Plaintiff did not fall within the definition of being "in custody" merely as a result of not being in possession of a valid passport, and Plaintiff did not exhaust the administrative remedies available to him in 8 U.S.C. § 1503(b) and (c). Docket No. 46 at 11–12.

The federal habeas corpus statute, 28 U.S.C § 2241 et seq., allows an individual who is in custody due to a violation of federal law or under authority of the federal government to challenge his or her custody. *Rosales v. Bureau of Immigration and Customs Enforcement*, 426 F.3d 733, 735 (5th Cir. 2005). The determination of "in custody" is made at the time the habeas petition is filed. *Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir. 2004). "In custody" is not limited "to situations in which the applicant is in actual, physical custody." *Jones v. Cunningham*, 371 U.S. 236, 239 (1963). "History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which ... support the issuance of habeas corpus." *Id.* at 240.

Even if the Court assumes *arguendo* that Plaintiff is "in custody," Plaintiff's habeas claim fails because a person filing a habeas petition must first exhaust administrative remedies. *Smith v. Holt*, 184 F.3d 819 (5th Cir. 1999).

Because Plaintiff is outside the United States, he may apply to "a diplomatic or consular officer ... for a certificate of identity for the purpose of traveling to a port of entry in the United States and applying for admission." 8 U.S.C. § 1503(b).[3] If said application is denied, Plaintiff is entitled to appeal the decision to the Secretary of State. *Id.* If the Secretary of State subsequently denies the appeal, the Court would then have jurisdiction to hear Plaintiff's habeas claim, as the prescribed administrative remedies would have been exhausted.

Alternatively, if Plaintiff is issued a certificate of identity, he "may apply for admission to the United States at any port of entry." 8 U.S.C. § 1503(c).[4] "A final determination by the

---

[3] § 1503(b) states as follows:
> [i]f any person who is not within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may make application to a diplomatic or consular officer of the United States in the foreign country in which he is residing for a certificate of identity for the purpose of traveling to a port of entry in the United States and applying for admission. Upon proof to the satisfaction of such diplomatic or consular officer that such application is made in good faith and has a substantial basis, he shall issue to such person a certificate of identity. From any denial of an application for such certificate the applicant shall be entitled to an appeal to the Secretary of State....

[4] § 1503(c) states as follows:
> [a] person who has been issued a certificate of identity under the provisions of subsection (b) of this section, and while in possession thereof, may apply for admission to the United States at any port of entry, and shall be subject to all the provisions of this chapter relating to the conduct of proceedings involving aliens seeking admission to the United States. A final determination by the Attorney General that any such person is not entitled to admission to the United States shall be subject to review by any court of competent jurisdiction in habeas corpus proceedings and not otherwise.

Attorney General that [Plaintiff] is not entitled to admission to the United States shall be subject to review by any court of competent jurisdiction in *habeas corpus* proceedings and not otherwise." *Id.* (emphasis added). Thus, Plaintiff must proceed with the foregoing administrative process of requesting a certificate of identity at the appropriate United States diplomatic or consulate office in Mexico.

### B. The Court lacks jurisdiction to provide relief under § 1503(a).

The R&R recommended dismissal of Plaintiff's § 1503(a) claim because: (1) Plaintiff was not "within the United States," and (2) Plaintiff did not reside or claim a residence within the Southern District of Texas. Docket No. 46 at 17. Plaintiff objected and argued: (1) Plaintiff was within the United States when he filed his complaint because he was standing at the Gateway Bridge in Brownsville, Texas, and (2) Plaintiff claimed a residence at his family home in Brownville, Texas. Docket No. 52 at 5–7.[5]

A person who is "within the United States" may bring a claim in federal court for the denial of a right or privilege as a national of the United States. 8 U.S.C. § 1503(a).[6] However, mere presence at a United States port of entry is insufficient to be "within the United States" for purposes of § 1503(a). "Axiomatic in statutory interpretation is the principle that laws should be construed to avoid an absurd or unreasonable result." *United States v. Female Juvenile*, 103 F.3d 14, 16–17 (5th Cir. 1996) (internal citations omitted). To construe § 1503(a)'s "within the United States" as including ports of entry conflicts with § 1503(b)'s instruction that persons not within the United States must apply for a certificate of identity "for the purpose of traveling to a port of entry in the United States and applying for admission." If a port of entry was "within the United States," then applying for a certificate of identity would be unnecessary; persons not within the United States could simply present themselves at a port of entry in order to fall under the Plaintiff's erroneous proposed scope of § 1503(a), which would effectively render § 1503(b)

---

[5] Because the Court finds Plaintiff is not "within the United States," it does not address Plaintiff's residence objection.

[6] Pursuant to 8 U.S.C. § 1503(a):
> [i]f any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States....

5

meaningless. The Court finds that it lacks jurisdiction under § 1503(a) because Plaintiff is not "within the United States".

### C. The Court lacks jurisdiction to provide relief under the APA

The R&R recommended dismissal of Plaintiff's APA claim because the denial of Plaintiff's passport application was not a "final agency action." Docket No 46 at 15. Thus, the R&R concluded the Court lacked subject-matter jurisdiction to hear said claim. *Id.* The R&R also concluded that *Rusk v. Cort*, 369 U.S. 367 (1962) did not support Plaintiff's APA claim. *Id.*

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA provides judicial review of a "final agency action for which there is no other adequate remedy in a court...." 5 U.S.C. § 704. Without a "final agency action," federal courts lack subject-matter jurisdiction. *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). To be a "final agency action," the action must (1) "mark the consummation of the agency's decision making process" and (2) be an action where "rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotations omitted). An intermediate step in an administrative process "cannot be viewed as a 'consummation' of agency decision making." *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011).

The initial denial of Plaintiff's passport application was an "intermediate step" in the process, not a "final agency action" by the Department of State. Plaintiff must follow the steps detailed in § 1503(b) before the Department of State's action becomes final. Thus, because there is no "final agency action," the Court lacks subject-matter jurisdiction to hear Plaintiff's APA claim.

*Rusk* does not alter the Court's conclusion as to the APA. *Rusk's* holding that the APA can be used to review any agency action is no longer valid. Subsequent to *Rusk*, the APA was amended to state as follows: "Agency action made reviewable by statute and *final agency action for which there is no other adequate remedy in a court* are subject to judicial review." 5 U.S.C. § 704 (emphasis added). Thus, the APA amendment imposed two prerequisites for judicial review: (1) the agency action must be final; and (2) there must be no other adequate remedy in a court.

Further, in *Califano v. Sanders*, 430 U.S. 99 (1977), the Supreme Court revised its position on standing under the APA as follows:

> Three decisions of this Court arguably have assumed, with little discussion, that the APA is an independent grant of subject-matter jurisdiction. *See ... Rusk v. Cort....* However, [the Court is persuaded] that the better view is that the *APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions.*

430 U.S. at 105 (emphasis added).

## IV. **CONCLUSION**

Although Plaintiff does not have standing to sue in federal court, he is not without recourse. Plaintiff may seek redress through § 1503 (b) and (c). Plaintiff may apply to "a diplomatic or consular officer ... for a certificate of identity for the purpose of traveling to a port of entry in the United States and applying for admission." 8 U.S.C. § 1503(b). If the application for the certificate of identity is denied, Plaintiff is entitled to appeal the decision to the Secretary of State. *Id.* If the Secretary of State denies the appeal, the Court would then have jurisdiction to hear Plaintiff's APA claim.

Alternatively, if Plaintiff is issued a certificate of identity, he "may apply for admission to the United States at any port of entry." 8 U.S.C. § 1503(c). "A final determination by the Attorney General that [Plaintiff] is not entitled to admission to the United States shall be subject to review by any court of competent jurisdiction in *habeas corpus* proceedings and not otherwise." *Id.* (emphasis added). If the Attorney General denies Plaintiff admission, the Court would then have jurisdiction to hear Plaintiff's habeas corpus claim.[7]

For the foregoing reasons, the "Report and Recommendation of the Magistrate Judge" (Docket No. 46) is **ADOPTED**. The Clerk's Office is hereby **ORDERED** to close this case.

Signed on this 26th day of June 2017.

Rolando Olvera
United States District Judge

---

[7] The Court would caution that any unreasonable time delay by the Defendants/Government to efficiently process any administrative step set forth in either § 1503(b) or (c) could be deemed by the Court to equate to a "final agency action."